Jayanti PATEL, Appellant,

v.

CITY OF EVERMAN, Tom Killebrew d/b/a Metro Code Analysis, L.L.P., Appellees.

No. 12–02–00174–CV.

Court of Appeals of Texas, Tyler.

Sept. 22, 2004.

**4**

Edward W. Sampson, Law Office of Ben C. Martin, L.L.P., Dallas, for appellant.

Elizabeth A. Elam, Timothy G. Sralla, Taylor, Olson, Adkins, Sralla & Elam, L.L.P., Fort Worth, for appellees.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

DIANE DeVASTO, Justice.

Appellees City of Everman and Tom Killebrew d/b/a Metro Code Analysis filed a motion for rehearing, which is overruled. Our opinion of May 28, 2004 is withdrawn, and the following opinion is substituted in its place.

Jayanti Patel ("Patel") appeals the trial court's order granting summary judgment in favor of the City of Everman (the "City") and Tom Killebrew ("Killebrew") d/b/a Metro Code Analysis ("MCA"). Patel raises five issues on appeal. We affirm in part and reverse and remand in part.

### BACKGROUND

In 1990, Patel purchased twenty apartment buildings in the Willow Woods complex in Everman, Texas. In October 1995, the City requested that Patel board up two of his buildings that were vacant. Patel complied, and further, boarded up other unrented units to exclude vagrants and prevent crime and vandalism.

In April 1997, Patel received notice that the City intended to demolish fifteen of his buildings because their doors and windows had been boarded up for more than six months. Subsequently, Patel attended a

meeting of the Everman Planning and Zoning Commission (the "Commission") concerning the proposed demolition of his buildings and informed the Commission that he was unaware of the ordinance prohibiting boarding windows and doors for more than a six-month period. At the conclusion of the meeting, the Commission voted to recommend to the Everman City Council that fifteen of Patel's buildings be demolished.

In July 1997, Patel filed suit seeking an injunction against the City. Ultimately, the trial court entered an agreed order (the "agreed order") stating, in pertinent part, as follows:

> IT IS ORDERED that Appellant Patel will repair said property so it is in compliance with all city codes for the City of Everman.

> IT IS ORDERED that the City of Everman will reasonably cooperate with Patel and shall not interfere in the repair process and further that Patel shall cooperate with the City of Everman and shall permit such inspections as the City of Everman shall require. Patel shall comply with all city codes and inspections before receiving any certificates of occupancy.

> In the event that each and every unit is not in compliance with the City of Everman City Codes by February 9, 1998, then in that event this Order and any Temporary Injunction shall expire and the City of Everman shall be permitted to demolish all units and property listed above without further notice and without further Court action.

Patel testified that from April 1997 until February 1998, he had substantial repairs made to all of his properties located in the Willow Woods complex, and that every unit in each of his buildings was newly remodeled and undamaged. Patel testified that he removed the boards from the exterior of his buildings. Patel further testified that he had the carpet replaced in seventy-six of the eighty units within his twenty buildings, and further still, that he had pitched roofs installed on thirteen of his buildings.[1] Patel testified that he repainted the units. Patel also testified generally that he made repairs such as repairing walls, replacing cabinets, and installing new doors and fixtures. Patel testified that each unit he owned had a heating unit located inside of it and also employed either a cooling unit located outside of it or screens installed on the windows. Patel further testified that not one unit had a hole in the floor or wall or contained exposed electrical wiring. Moreover, Patel testified that he was present at the property on a daily basis for nine years and never saw a rat or rodent in any of his buildings, nor was he advised of any rat or rodent problem by any of his tenants.

Effective on or about February 5, 1998, the City enacted a new building code ordinance. On February 20, 1998, Killebrew, a City Code Enforcement Officer, inspected Patel's properties. Thereafter, Killebrew sent Patel a notice of substandard building as well as separate inspection reports on each of his properties.

Patel also testified that he received notice of a meeting of the Everman Building Board of Appeals (the "Board") to be conducted on March 5, 1998, which he and his attorney attended. Patel testified that he could not recall whether his attorney presented evidence other than oral evidence. Patel testified that his attorney stated to the Board that many of the defects listed

---

1. Patel testified that inspections were performed on all thirteen roofs by a "city official," but that he did not receive a "green tag" or written certificate of completion from the City concerning the new roofing.

in Killebrew's reports were false and requested that Patel be allowed thirty days to address the newly cited problems. Both Patel and his attorney left the meeting after the consideration of only three of Patel's properties, citing the Board's bias as their reason for leaving. Ultimately, the Board voted to demolish all twenty of Patel's properties. The City commenced the demolition process as to eighteen of Patel's buildings in April 1998.

Patel filed the instant suit against the City and Killebrew d/b/a MCA alleging that the demolition of his properties amounted to a taking without just compensation in violation of his rights pursuant to Article I, section 17 of the Texas Constitution. As to Killebrew and MCA, Patel alleged that these defendants were liable for trespass, conversion, and destruction of property. Patel also raised a procedural due process claim pursuant to Article I, section 19 of the Texas Constitution. All defendants jointly filed both traditional and no-evidence motions for summary judgment, to which Patel responded. Ultimately, the trial court granted the defendants' motions for summary judgment and ordered that Patel take nothing. This appeal followed.

### STANDARD OF REVIEW

In reviewing a traditional motion for summary judgment,[2] this court must apply the standards established in *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985), which are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true;

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*See id.* at 548–49. For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). A movant must either negate at least one essential element of the nonmovant's cause of action, or prove all essential elements of an affirmative defense. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *see also MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952). The only question is whether or not an issue of material fact is presented. *See* TEX.R. CIV. P. 166a(c).

Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See, e.g., City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). All theo-

---

2. TEX.R. CIV. P. 166a(c).

ries in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* Tex.R. Civ. P. 166a(c).

## MALOOLY ISSUE

In his first issue, Patel argues generally that the trial court's grant of summary judgment must be reversed because Appellees failed to prove their entitlement to judgment as a matter of law. We interpret Patel's first issue as a general assignment of error. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 120 (Tex.1970); *Reese v. Beaumont Bank, N.A.,* 790 S.W.2d 801, 804 (Tex.App.-Beaumont 1990, no writ); *see also Dubow v. Dragon,* 746 S.W.2d 857, 859 (Tex.App.-Dallas 1988, no writ) (where there is no general point of error complaining of the granting of summary judgment, if there is another possible ground, which is not attacked by point of error, on which the judgment could have been entered, the judgment must be affirmed); *King v. Texas Employers' Ins. Ass'n,* 716 S.W.2d 181, 182–83 (Tex.App.-Fort Worth 1986, no writ) (because summary judgment may have been granted, either properly or improperly, on a ground set forth in the motion for summary judgment, which ground was not challenged by point of error by the appellant, the summary judgment must be affirmed); *Rodriguez v. Morgan,* 584 S.W.2d 558, 559 (Tex. Civ.App.-Austin 1979, writ ref'd n.r.e.) (although the appellant from the summary judgment stated some specific points of error, the trial court may have based the summary judgment on a ground not specifically challenged by the appellants by assignment of error or by briefing). For the reasons set forth below, Patel's first issue is sustained in part, and overruled in part.

## TAKINGS CLAIM

In his second issue, Patel contends that the trial court erred in granting summary judgment on his "takings claim" under the Texas Constitution.

### *Governing Law*

Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...." Tex. Const. Ann., art. I, § 17; *see Knowles v. City of Granbury,* 953 S.W.2d 19, 23 (Tex.App.-Fort Worth 1997, pet. denied). To recover under article I, section 17, a plaintiff must prove that (1) the government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use. *See City of Abilene v. Smithwick,* 721 S.W.2d 949, 951 (Tex.App.-Eastland 1986, writ ref'd n.r.e.). "Inverse condemnation" occurs when property is taken, damaged, or destroyed for public use without process or without proper condemnation proceedings, and the property owner attempts to recover compensation. *See City of Abilene v. Burk Royalty Co.,* 470 S.W.2d 643, 646 (Tex.1971); *Allen v. City of Texas City,* 775 S.W.2d 863, 864 (Tex.App.-Houston [1st Dist.] 1989, writ denied).

### *"Public Use"*

In general, property is taken for a public use only when there results to the public some definite right or use in the undertaking. *See Bay Ridge Util. Dist. v. 4M Laundry,* 717 S.W.2d 92, 101 (Tex. App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). Whether a taking of property is for public use is a judicial question. *See Housing Auth. of City of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79, 84 (1940); *see also Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699, 704 (1959).

The City argues that the properties were condemned based on their substand-

ard condition as a measure to prevent harm to its citizens. The City attempts to distinguish the facts in the instant case from a scenario wherein a city condemns property to use as a park or government facility, or from which to otherwise derive some sort of affirmative benefit.[3]

Patel argues that the orders for the demolition of each of his properties evidence that the properties were taken for public use. The orders to which Patel refers state, in pertinent part,

[T]he Board finds from evidence presented at the public hearing that the buildings are in violation of the standards set forth in Article IV of Chapter 4 of the Everman City Code and that the defects or conditions exist to the extent that the life, health, property or safety of the public are endangered.

In support of his argument, Patel cites *City of Houston v. Crabb*, 905 S.W.2d 669 (Tex.App.-Houston [14th Dist.] 1995, no writ). In *Crabb*, the court explained that the term "public use" includes matters of public health and public safety. *Id.* at 674. The City has cited no authority in its brief, nor are we aware of any such authority, that would cause us to conclude that the interpretation of the term "public use" set forth in *Crabb* is incorrect. We conclude that the language in the aforementioned orders for demolition evidences that the properties in question were demolished for "public use." As the City's summary judgment evidence does not contradict the underlying reason for the demolition, as set forth in its orders, it has failed to negate the evidence supporting the "public use" element of Patel's takings claim.

### Consent

■ Patel next argues that the trial court erred in finding that he consented to the demolition of his properties. Consent is an affirmative defense to Patel's takings claim, as to which the City has the burden of proof. *See Crabb*, 905 S.W.2d at 674–75.

■ The City argues that Patel consented to the demolition of fifteen of his properties by failing to comply with the terms of the agreed order. It is well established that "a court cannot render a valid agreed judgment absent consent at the time it is rendered...." *Reppert v. Beasley*, 943 S.W.2d 172, 174 (Tex.App.-San Antonio 1997, no writ). The record does not indicate that Patel has successfully challenged the validity of the agreed order. Thus, it follows that he consented to the order.

■ An agreed judgment is contractual in nature; in effect it is a written agreement between parties, as well as an adjudication. *See Sanderlin v. Sanderlin*, 929 S.W.2d 121, 122 (Tex.App.-San Antonio 1996, writ denied). Here, pursuant to the agreed order, Patel was obligated to "repair [the] property so it is in compliance with all city codes for the City of Everman." The order further states as follows:

In the event that each and every unit is not in compliance with the City of Everman City Codes by February 9, 1998, then in that event this Order and any Temporary Injunction shall expire and the City of Everman shall be permitted to demolish all units and property listed above without further notice and without further Court action.

Thus, if there exists uncontroverted summary judgment evidence supporting that Patel failed to repair each of the fifteen properties so that they were each in compliance with city codes for the City of Everman, it is reasonable to conclude that

---

**3.** The City's argument on appeal is the same as in its first amended motion for summary judgment.

Patel consented to the demolition of these fifteen properties.[4]

Patel first argues that the only conditions identified by the City in 1997 that gave rise to the agreed order were (1) boarded doors and windows and (2) exterior graffiti damage, both of which were rectified by the designated date, and that these conditions were in the minds of the parties when the agreed order was entered. Patel further contends that his signature on the agreed order cannot constitute consent to abide by ordinances that were not in effect at the time he entered into the agreement.

 When construing an agreed judgment, as with a contract, the court's primary concern is to give effect to the written expression of the parties' intentions, and the judgment should be construed to give effect to its ordinary meaning and the objective intent of the parties as expressed in the writing. See Sanderlin, 929 S.W.2d at 123; Harvey v. Harvey, 905 S.W.2d 760, 764 (Tex.App.-Austin 1995, no writ). In construing an agreed judgment, the judgment will be read as a whole, see, e.g., Grain Dealers Mutual Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997), and if its terms are plain and unambiguous, the intent of the parties will be gathered from such terms. See Evans v. Williams, 194 S.W. 181, 185 (Tex.Civ.App.-Austin 1916, writ ref'd). An alleged oral agreement in conflict with the provisions of an agreed judgment is properly disregarded. See Giraud v. Reserve Realty Co., 94 S.W.2d 198, 198 (Tex.Civ.App.-San Antonio 1936, writ ref'd).

The agreed order in the instant case is not ambiguous. Patel was obligated to repair the subject property so that it was in compliance with all city codes for the City of Everman. The reference to "all city codes" does not support Patel's interpretation that the parties intended to limit the repairs to the boarded up doors and windows and the graffiti on the buildings' exteriors. Furthermore, the agreed order did not except Patel from potential changes in the City's building ordinances between the date the agreed order was entered and the deadline for compliance set forth therein. It is axiomatic that our laws are ever-evolving, and the citizenry has an obligation to abide by the law even as it changes.[5] In the instant case, Patel has neither attacked the validity of the substance of the new ordinances enacted by the City, nor the process by which they were enacted. Based on our reading of the agreement, we conclude that the February 9, 1998 deadline for compliance with the Everman City Codes indicates that the standard for compliance is the applicable ordinance as it existed at the time of the February 9, 1998 deadline.

 Patel next argues that the evidence does not establish that Patel's properties were not in compliance with relevant provisions of the Everman City Codes on February 9, 1998 as Killebrew's observations cited in Appellees' motion for summary judgment were controverted by Patel's own deposition testimony. However, as Patel concedes in his brief, his deposition testimony reflects that he was in violation of at least one provision of the Everman City Codes. Specifically, Patel

4. In making this statement, we do not discount Patel's argument that the City did not fulfill its obligations pursuant to the agreed order. Patel's argument is addressed below.

5. As a property owner, the record reflects that Patel was subject to the building ordinances enacted by the City as such ordinance related to "dangerous and substandard" buildings. The record further reflects that the City's Home Rule Charter empowered the City to amend ordinances.

agreed with regard to each of the properties subject to the agreed order that the City's substandard building declaration was accurate concerning a code violation described as a health hazard related to the properties' plumbing. Specifically, Patel acknowledged that there were vacuum breakers missing on each building's respective hose bibb. Therefore, we conclude that the summary judgment evidence establishes that Patel's buildings were not in compliance with "all city codes," on or before the February 9, 1998 deadline as required by the agreed order.

■ Patel further argues that the City cannot rely on the agreed order in that the City failed to comply with its obligations to "reasonably cooperate with Patel and ... not interfere in the repair process." Specifically, Patel argues that the City failed to fulfill its obligations as follows:

1. Master electrician, Roel Garcia, went to pull electrical permits for Patel's buildings in 1998 and was told by a City Employee that he could not use the permits because the City was going to demolish Patel's buildings.

2. Patel was told by Killebrew that he could not enter his buildings or make repairs and the demolition order was made.

■ Where a party does not comply with his obligation under a plain provision in an agreed judgment, he is not entitled to complain of the failure of the other party to comply with his respective obligations under the agreed judgment. *See Giraud,* 94 S.W.2d at 199. Here, Patel's

deposition testimony reflects that Roel Garcia attempted to secure permits from the City at some time between February 20, 1998 and April 16, 1998.[6] Similarly, it is apparent from the record that the exchange between Patel and Killebrew outlined above took place after the February 9, 1998 deadline. Therefore, since the incidents set forth above occurred subsequent to the February 9, 1998 deadline mandated by the agreed order, the City was already entitled to demolish Patel's properties subject to the order "without further notice and without further Court action."[7] Reading the provisions of the agreed order in conjunction with one another, Patel's opportunity to repair his buildings ended on February 9, 1998. It follows that the City's obligation to reasonably cooperate with Patel and not interfere in the repair process ceased on that date as well.

■ Finally, Patel argues that he was denied notice of his need to present evidence of repairs, and thus, his failure to present evidence does not constitute an affirmative act of consent to the City's demolition of his properties. Yet, as set forth above, the record reflects that Patel affirmatively consented to the terms of the agreed order. The record further reflects that Patel did not repair his buildings so that every unit was in compliance with the City of Everman City Codes by February 9, 1998. As such, pursuant to the terms of the agreed order, the City was permitted to demolish all units and property listed in the order without further notice and without further court action. The City expressly stated that it was not waiving its rights under the agreed order by conduct-

---

6. Roel Garcia's affidavit testimony does not specify a date other than the general statement that he attempted to obtain such permits during 1998.

7. The record indicates that the City sent Patel a letter advising him of a hearing to be con-

ducted concerning the substandard condition of his properties. However, the City stated in the letter that it was not waiving its rights under the agreed order by conducting a public hearing.

ing a public hearing. Patel consented to the demolition of his properties by consenting to the terms of the agreed order and failing to meet his obligations therein by the February 9, 1998 deadline. Events that took place subsequent to the February 9, 1998 deadline are not relevant.[8]

Patel notes that if we conclude that he consented to the demolition, such consent is only effective as to the properties covered by the agreed order. We agree. As such, we conclude that the trial court properly held that Patel consented to the demolition of the fifteen properties referenced in the agreed order.[9]

*Nuisance*

■ Patel further argues that the trial court erred in granting summary judgment in favor of the City based on the defense of nuisance. The City argues that Patel's takings claim fails because the summary judgment evidence demonstrates that Patel's properties constituted a nuisance as a matter of law.[10]

■ Where a plaintiff establishes that a governmental entity intentionally destroyed his property because of a real or supposed public emergency, the government entity may then defend its actions by proof of a great public necessity. *See*

*Crabb*, 905 S.W.2d at 674–75. In other words, the governmental entity has to show that the property destroyed was a nuisance on the day it was destroyed. *Id.* at 675.

■ A public nuisance is maintained (1) by act, or by failure to perform a legal duty, (2) intentionally causing or permitting a condition to exist, (3) which injures or endangers the public health, safety, or welfare. *See LJD Properties, Inc. v. City of Greenville*, 753 S.W.2d 204, 207 (Tex.App.-Dallas 1988, writ denied). The government may abate public nuisances by virtue of its police powers. ˙ *See id.*

In its amended motion for summary judgment, the City appended evidence relevant to the issue of whether conditions existed on Patel's property at the time of the demolition thereof which endangered the public health, safety, or welfare. Among the evidence presented is testimony from Killebrew's affidavit, summarized as follows:

- The roofs on Patel's apartments had been substantially modified in violation of the Uniform Building Code such that they posed a threat to any occupants as the construction standards

---

**8.** Later in his brief, Patel argues that the trial court erred in granting summary judgment as to his claim of "bad faith taking," a form of inverse condemnation. *See, e.g., Westgate, Ltd. v. State,* 843 S.W.2d 448, 454 (Tex.1992). Assuming that *Westgate* provides for a "bad faith takings" claim, the actions Patel cites as constituting "bad faith" are not raised in conjunction with Patel's argument that the City failed to cooperate under the agreed order. Thus, Patel has waived any argument that the "bad faith" actions of the City underlying his inverse condemnation claim amounted to a breach of the City's obligations pursuant to the agreed order. *See* Tex.R.App. P. 38.1(h). Furthermore, the City's consent defense would serve to bar Patel's takings claims, with or without the element of bad faith.

**9.** The properties subject to the agreed order are as follows: 404 Noble Street; 302 Race Street; 306 Race Street; 308 Race Street; 310 Race Street; 312 Race Street; 402 Race Street; 406 Race Street; 408 Race Street; 412 Race Street; 414 Race Street; 404 King Street; 406 King Street; 408 King Street; and 502 Race Street. The record reflects that the property at 302 Race Street was not demolished and is not subject to the instant suit.

**10.** As Patel consented to the demolition of the properties detailed in note 9, our discussion of the City's nuisance defense shall concern only the properties located at 403 Lee Street, 410 Race Street, 405 King Street, and 403 King Street.

used in the roofs had not been verified by a building official.

- Each of Killebrew's substandard building reports indicated that the respective building was, due to the violations chronicled therein, "... a hazard to the public heath, safety and welfare." The "violations found on Patel's properties posed a threat to the public health, safety and welfare of the citizens of Everman."
- Subsequent to the March 5, 1998 hearing, Patel did not notify Killebrew that he had cured any of the code violations or provide invoices demonstrating the correction of said violations.

In his deposition testimony, Patel denied the existence of all of the problems set forth in each of Killebrew's substandard building reports, save for missing vacuum breakers on a hose bibb, which Patel testified that he had fixed as to every building prior to its demolition.

 We iterate that we must review the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Nixon*, 690 S.W.2d at 548–49. The City attacks Patel's deposition evidence as conclusory and points out that it objected to such testimony at the trial court. However, there is no indication that the trial court sustained the City's objection to Patel's testimony or struck Patel's deposition testimony. Moreover, the City has not properly brought an issue on appeal challenging the trial court's consideration of its objection to Patel's summary judgment evidence. We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits,

depositions, exhibits, and other summary judgment proof. *See Penn*, 252 S.W.2d at 932. We conclude that Patel's deposition testimony raises a fact issue with regard to the existence of the violations cited in Killebrew's substandard building reports. Inasmuch as the violations cited in Killebrew's reports form the basis of Killebrew's statement that buildings were "a hazard to the public heath, safety and welfare[,]" the trial court's grant of summary judgment on the basis of the city's defense of nuisance was improper.

### Statute of Limitations

 Patel next argues that the trial court erred in finding that his claim was barred by a two-year statute of limitations.[11] Patel contends that his claim is one for inverse condemnation. Where property has been "taken," a plaintiff's right to maintain a cause of action would not be barred until the expiration of the ten-year period necessary to acquire land by adverse possession. *Hues v. Warren Petroleum Co.*, 814 S.W.2d 526, 530 (Tex. App.-Houston [14th Dist.] 1991, writ denied). We initially note that the record does not reflect that the City specially excepted to Patel's pleadings. Thus, we apply a liberal construction of Patel's pleadings to determine if Patel properly pleaded a claim for inverse condemnation. *See Crabb*, 905 S.W.2d at 673. To recover under the theory of inverse condemnation, the property owner must establish that: (1) the governmental entity intentionally performed certain acts; (2) that resulted in a taking of property; (3) for public use. *Waddy v. City of Houston*, 834 S.W.2d 97, 102 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

---

11. Among the remaining properties subject to our discussion, the only property potentially barred by the City's statute of limitations defense is the property located at 410 Race Street. The record reflects that Patel brought suit concerning the remaining three properties within two years of their demolition.

In the case at hand, Patel averred as follows:

Defendant Everman has failed to pay Patel any compensation for the destruction or foreclosure of the above-referenced buildings. Such failure constitutes a taking, damaging or destroying of Patel's property for public use and benefit without adequate compensation in violation of Article I, Secs. 17 and 19 of the Constitution of the State of Texas.

The City argues that Patel's case is one related to the "damaging" of property, and thereby, properly subject to a two-year statute of limitations. However, Patel has pleaded that the City's actions amounted to either taking, damaging, or the destruction of his property for public use. Patel further states in his petition, "To date, all but two of the above-referenced buildings have been demolished." Patel has pleaded facts that give proper notice of his claim that the City intentionally demolished his property for public use. A petition is sufficient if it gives fair notice of the facts relied upon, enabling the defendant to prepare a defense. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex.2000) (citing *Broom v. Brookshire Bros., Inc.*, 923 S.W.2d 57, 60 (Tex.App.-Tyler 1995, writ denied)). Furthermore, the record clearly indicates that the property located at 410 Race Street was demolished. *See Crabb*, 905 S.W.2d at 672–74 (court held taking occurred where city demolished building for the public use even though the underlying property retained a value of $5,000). Thus, we conclude that Patel properly pleaded a claim for inverse condemnation. *Id.* Therefore, the trial court improperly found that Patel's claim was governed by a two-year statute of limitations.

With respect to his argument that the trial court erred in granting the City's motion for summary judgment on its affirmative defense of consent, Patel's second issue is overruled. The remainder of Patel's second issue is sustained.

### DUE PROCESS

In his third issue, Patel argues that the trial court erred by granting summary judgment in the City's favor on his state due process claim. The due process provisions of the Texas Constitution do not provide for a cause of action for damages, but rather only for direct claims seeking equitable relief. *See Securtec, Inc. v. County of Gregg*, 106 S.W.3d 803, 816 (Tex. App.-Texarkana 2003, no pet.); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148–49 (Tex.1995) (concluding with regard to speech and assembly clauses, that no historical underpinnings or text of the Texas Constitution implied a cause of action for damages for unconstitutional conduct); *Mitchell v. Amarillo Hosp. Dist.*, 855 S.W.2d 857, 872–73 (Tex.App.-Amarillo 1993, writ denied).

Patel contends that his is a claim in equity requiring compensation.[12] Yet, where, like Patel, a party seeks monetary damages, he seeks a legal remedy, not an equitable one. *See Securtec, Inc.*, 106 S.W.3d at 816. Further, Patel argues that, in other contexts, courts have found a private cause of action to exist despite the absence of an express provision for a private right of action. The cases cited by Patel in support of his proposition, *Nixon*, 690 S.W.2d at 549 (Tex.1985), *Dann v. Studebaker–Packard Corp.*, 288 F.2d 201, 209 (6th Cir.1961), and *Caskey v. Bradley*, 773 S.W.2d 735, 738 (Tex.App.-Fort Worth

---

**12.** Patel notes that "the violation of [his] due process rights has effected a damage that cannot be remedied by the mere reinsurance of an overdue notice or rehearing on the condition of now-destroyed buildings."

1989, no writ),[13] are inapplicable to the issue before us. As such, we hold that Patel seeks relief that is unavailable for the City's alleged violation of his rights under Article I, section 19 of the Texas Constitution. Patel's third issue is overruled.

### TRESPASS AND CONVERSION CLAIMS

Patel's fourth issue concerns his claims of trespass and conversion against Killebrew and MCA.[14]

### Res Judicata

Patel first argues that the trial court erred in granting Appellees' motion for summary judgment on their affirmative defense of res judicata. Appellees argue that the United States District Court for the Northern District of Texas's order granting summary judgment in Appellees' favor in Cause No. 4:99CV982BE; *Jayanti Patel v. City of Everman, Tom Killebrew d/b/a Metro Code Analysis*, 2001 WL 11074 (N.D.Tex. Jan.3, 2001) is res judicata as to Patel's claims for trespass and conversion.

■ The doctrine of res judicata is an affirmative defense. *See* TEX.R. CIV. P. 94. In the case at hand, since Appellant's federal lawsuit proceeded to judgment first, we must apply federal principles of res judicata. *See Fernandez v. Mem'l Healthcare Sys., Inc.*, 896 S.W.2d 227, 230 (Tex. App.-Houston [1st Dist.] 1995, writ denied) (citing *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex.1990)). Under federal law, res judicata will apply if (1) the parties are identical in both suits; (2) the prior judgment is rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same cause of action is involved in both cases. *Id.*

Here, the parties are identical in both suits. Patel argues that it is clear that no final judgment on the merits was issued on his trespass and conversion claims by any court whatsoever, let alone a court of competent jurisdiction. Patel bases his argument on the trial court's order dismissing his takings claims for want of jurisdiction. In its order, the federal court stated as follows:

> The court retains federal questions jurisdiction over Patel's substantive due process, equal protection and racial discrimination complaints. Patel's remaining complaints are dismissed as they are not yet ripe for determination.

In his response to Appellees' motion for summary judgment, Patel contended that it was clear that his claims of trespass and conversion were inherently intertwined with his takings claim, which the federal court dismissed as not yet ripe.

### Court of Competent Jurisdiction

■ As Patel claims that the district court was not a court of competent jurisdiction, we will address this element of res judicata first. Res judicata, or claim preclusion, bars all claims that were brought, or could have been brought, in a previous action. *Fernandez*, 896 S.W.2d at 232 (citing *Langston v. Insurance Co. of*

---

**13.** *Nixon* and *Caskey* set forth the rule that negligence per se can arise from an unexcused violation of a statute. *See Nixon,* 690 S.W.2d at 549; *Caskey,* 773 S.W.2d at 738. *Dann* concerns the question of whether an investor may bring an action in his own behalf in lieu of waiting for the Commission to bring it for him under the Securities and Exchange Act. *See Dann,* 288 F.2d at 208.

**14.** Patel states in his brief that he is not challenging the trial court's rendition of summary judgment with respect to his claim for destruction of property. For ease of reference, Killebrew and MCA will be referred to collectively as "Appellees."

*N. Am.*, 827 F.2d 1044, 1047 (5th Cir. 1987)). When a lawsuit is brought in federal court, and there is no jurisdictional obstacle to advancing state law claims, res judicata bars any effort to assert the state law claims in a separately filed lawsuit. *Fernandez*, 896 S.W.2d at 232 (citing *Eagle Properties, Ltd.*, 807 S.W.2d at 718). When a federal claim and a state claim are combined in one lawsuit, and derive from a common nucleus of operative facts, a federal court has the power to adjudicate the state court claim, under the doctrine of pendent jurisdiction. *Fernandez*, 896 S.W.2d at 232 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). To determine whether the omitted state claims could have been brought in the federal action, we must (1) determine whether the federal court possessed jurisdiction over the omitted claim; and (2) whether the federal court would have clearly declined to exercise that jurisdiction. *Fernandez*, 896 S.W.2d at 232 (citing *Jeanes v. Henderson*, 688 S.W.2d 100, 104 (Tex.1985)).

A comparison of Patel's state court petition and his federal complaint demonstrates that the facts alleged are virtually the same. More specifically, with respect to his allegations against Killebrew and MCA, in his federal complaint, Patel alleged as follows:

> Shortly after the injunction was denied, the City of Everman proceeded to demolish each building owned by Patel. During this process, Adam Killebrew, acting on behalf of Tom Killebrew, went through Patel's buildings knocking holes in Patel's walls and vandalizing Patel's buildings.

Similarly, in his petition in the case at hand, with respect to Appellees Killebrew and MCA, Patel pleaded as follows:

> In May of 1998, Defendant Metro Code Analysis, L.L.P., by and through Defendant Tom Killebrew, directed its agents and/or employees to loot and vandalize Patel's fourplexes which included breaking light fixtures, windows, and thermostats, and taking doors and electrical boxes.

Based on our reading of Patel's pleadings in both his federal and state lawsuits, we conclude that both lawsuits are derived from a common nucleus of operative facts.

Patel's argument relates more closely to the question of whether the federal court would have clearly declined to exercise jurisdiction over his trespass and conversion claims. In its memorandum opinion dismissing Patel's takings claims, the court stated as follows:

> Patel's claims of an unlawful taking without just compensation are premature. His claims under the Takings Clauses of the state and federal constitutions must be dismissed for lack of jurisdiction. His claim of denial of procedural due process, being dependent on the factual development of his takings claims, is also unripe. Similarly, his complaints regarding Section 214.001 of the Texas Local Government Code and the Everman City Ordinance governing demolition of substandard properties are intertwined with his allegations that his property was taken without just compensation and thus not ripe until his Takings Clause claims are resolved.

> Dismissal of the foregoing claims, however, does not render federal question jurisdiction nonexistent. Patel has raised claims involving federal substantive due process, equal protection, and race discrimination that exist independent of the Takings Clause. These complaints stem from the City Council's vote to raze his property and will remain even if he seeks or recovers just com-

pensation for the demolition of his buildings. The court retains federal question jurisdiction over Patel's substantive due process, equal protection, and racial discrimination complaints.

Thus, Patel contends that his trespass and conversion claims were inherently intertwined with his takings claim and would have, had he asserted them, been dismissed as well.

■■■ As set forth in the federal court's opinion, the claims it retained would remain even if Patel sought or recovered just compensation for the demolition of his buildings. To recover for conversion, a plaintiff must prove that (1) the plaintiff owned, possessed, or had the right of immediate possession of the property, (2) the property was personal property, (3) the defendant wrongfully exercised dominion or control over the property; and (4) the plaintiff suffered injury. *See Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 391 (Tex.1997); *United Mobile Networks, L.P. v. Deaton,* 939 S.W.2d 146, 147–48 (Tex. 1997). To recover for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was (a) physical, (b) intentional, and (c) voluntary, and (3) the defendant's trespass caused injury to the plaintiff. *See Pentagon Enters. v. Southwestern Bell Tel. Co.,* 540 S.W.2d 477, 478 (Tex.App.-Houston [14th Dist.] 1976, writ ref'd. n.r.e.). While Killebrew's acts as alleged by Patel arose from the same nucleus of operative facts— the City's destruction of Patel's properties—such acts are not intertwined with Patel's takings claim. Indeed, Patel has not pleaded in the instant case that Killebrew or MCA are somehow liable under Article I, section 17. We conclude that the specific allegations giving rise to Patel's trespass and conversion claims are not so inextricably intertwined with the allegations giving rise to his inverse condemnation suit so as to cause us to further conclude that the federal court would have clearly declined to exercise its jurisdiction thereon.

*Remaining Elements*

■■■ The federal courts have adopted the "transactional test" for determining whether two complaints involve the same cause of action for purposes of res judicata. *Fernandez,* 896 S.W.2d at 231 (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.,* 20 F.3d 663, 665 (5th Cir.1994)). Under this approach, the critical issue is not the relief requested or the theory asserted, but whether the plaintiff bases the two actions on the same nucleus of operative facts. *Id.* As set forth above, based on a comparison of Patel's pleadings in his federal suit with his pleadings in the case at hand, we have concluded that the two actions arise from the same nucleus of operative facts.

Furthermore, the record indicates that subsequent to its dismissal of Patel's takings claims and related claims, the trial court entered a final summary judgment as to Patel's claims for equal protection, substantive due process, and race discrimination. We hold that the trial court did not err in granting Appellees' motion for summary judgment on its affirmative defense of res judicata. Patel's fourth issue is overruled.

### NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

In his fifth issue, Patel argues that the trial court erred in granting Appellees' no-evidence motion for summary judgment. After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of

one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* The movant need not produce any proof in support of its no-evidence claim. *See id.; see also* Judge David Hittner and Lynne Liberato, *Summary Judgments in Texas,* 34 HOUS. L.REV. 1303, 1356 (1998). The motion must be specific in alleging a lack of evidence on an essential element of a cause of action, but need not specifically attack the evidentiary components that may prove an element of the cause of action. *See Denton v. Big Spring Hosp. Corp.,* 998 S.W.2d 294, 298 (Tex.App.-Eastland 1999, no pet.). Once a no-evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.,* 988 S.W.2d 316, 316–17 (Tex. App.-Houston [14th Dist.] 1999, no pet.). A no-evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *See Havner,* 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence.

*See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

On appeal, we will uphold a no-evidence summary judgment only if the summary judgment record reveals no evidence of the challenged element, i.e., (a) a complete absence of evidence as to the challenged element; (b) the evidence offered to prove the challenged element is no more than a mere scintilla; (c) the evidence establishes conclusively the opposite of the challenged element; or (d) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove the challenged element. *See Taylor–Made Hose, Inc. v. Wilkerson,* 21 S.W.3d 484, 488 (Tex.App.-San Antonio 2000, pet. denied) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L.REV. 361, 362–63 (1960)).

In the case at hand, we need not reach the issue of the propriety of the trial court's order granting Appellees' no-evidence motion for summary judgment as to Patel's claims of trespass, conversion, or due process as we have concluded that the trial court properly granted Appellees' traditional motion for summary judgment with regard to such claims. In its brief, the City argues that the trial court properly granted its no-evidence motion for summary judgment with regard to Patel's takings claim as well. Specifically, the City argues that Patel can provide no evidence that (1) his properties were taken for "public use" and/or (2) the City acted beyond its reasonable exercise of police power.

To iterate, in order to recover under article I, section 17, a plaintiff must show that (1) the government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use. *See Smithwick,* 721 S.W.2d at 951. As set forth above, there is some evidence supporting

that Patel's properties were taken for "public use." As to whether the City acted beyond its reasonable exercise of police power, the City contends that since, as it alleged, Patel's properties constituted a nuisance as a matter of law, it "lawfully exercised its police powers by ordering the repair and then demolition" of the properties. However, since the City had the burden of proving that Patel's properties constituted a nuisance as a matter of law, *see Crabb*, 905 S.W.2d at 674–75, it was not entitled to move for a no-evidence motion for summary judgment on such a ground. *See* TEX.R. CIV. P. 166a(i). Even so, as set forth above, we concluded that the trial court's grant of summary judgment on the basis of the city's defense of nuisance was improper because Patel's deposition testimony raised a fact issue as to nuisance. We hold that the trial court incorrectly granted the City's no-evidence motion for summary judgment as to Patel's takings claims inasmuch as such claims are not otherwise barred by the trial court's grant of summary judgment in the City's favor on its affirmative defense of consent. Patel's fifth issue is sustained in part.

### CONCLUSION

We conclude that the trial court incorrectly granted summary judgment on Patel's takings claim other than as to the City's affirmative defense of consent, as to which summary judgment was appropriate. Therefore, we have sustained in part, and overruled in part, Patel's issues one, two, and five. We have also overruled Patel's issues three and four. Accordingly, we *reverse* the trial court's order granting summary judgment in favor of the City and *remand* the cause for further proceedings consistent with this opinion with regard to Patel's takings claims as to the following properties, which are not subject to the City's affirmative defense of consent: 403 Lee Street, 410 Race Street, 405 King Street, and 403 King Street. In all other respects, we *affirm* the trial court's order granting summary judgment.