

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00221-CR

_____


BROCK JERNIGAN, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 05F0226-005


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Brock Jernigan was placed on deferred adjudication community supervision for five years after pleading guilty to the offense of evading arrest with a vehicle. Capias issued prior to the expiration period pursuant to the State's motion to adjudicate guilt based upon an alleged "Battery First Degree" committed by Jernigan in Arkansas. The trial court found Jernigan failed to abide by the condition of community supervision that he "commit no offense against the law of this or any State," adjudicated him guilty of evading arrest with a vehicle, and sentenced him to two years' confinement. Jernigan appeals the judgment adjudicating guilt on grounds that the trial court erred in: (1) denying a motion to suppress his confession in the Arkansas case; (2) not awarding Jernigan "his back time"; and (3) denying Jernigan an appellate bond. We affirm the trial court's judgment because: (1) we find that the trial court properly overruled the motion to suppress; (2) the record does not reveal the amount of time Jernigan spent in jail entitling him to the specific credit he seeks; and (3) we lack jurisdiction over the order denying the appeal bond.

I.      **Jernigan's Motion to Suppress Was Properly Overruled**

The State called Officer Wayne Easley with the Texarkana, Arkansas Police Department, who testified that Jernigan's fifteen-month-old stepdaughter was admitted to a Little Rock Hospital for "massive head injuries. The back of her skull was busted and caved in." Easley brought Jernigan in for questioning. After advising him of his rights, Easley obtained Jernigan's

signature stating that he understood the Miranda[1] warnings that were issued and that he wished to waive his rights.[2]

The State sought to introduce Jernigan's confession during the interrogation. Contending "that in the middle of the interview [Jernigan] invoked his right to counsel," Jernigan's counsel asked "that any statement that Brock Jernigan made that day be suppressed." Counsel's voir dire examination of Easley produced the following transcript:

> Q      At some point in the interview, did Mr. Jernigan say, "Do I need to get a lawyer?"
>
> A      He asked, "Do I need a lawyer?"
>
> Q      Okay.   And what was your response?
>
> A      I said, "It's up to you.   If you want a lawyer, you can have one. You've got the right to talk to me and you've got the right to stop talking to me."
>
> Q      Okay.   And then, along these same lines, did he say, "Can I talk to one?"
>
> A      Yes.   And we told him, "Yes, he can.   He had the right to stop. He had the right to stop talking to us at any time.   It was his choice.   I explained the Miranda warning as we read it to him at the beginning of the deal. . . . he told me he wanted to talk to me, he's continued to talk.   He never did break down from not talking or in any way indicate that he did not want to talk to me."

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.

*De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *McDonald v. State*, 179 S.W.3d

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] It was not asserted that the *Miranda* warnings were improper or that Jernigan did not understand them and thereafter voluntarily consented to an interrogation.

571, 576 (Tex. Crim. App. 2005). Under this standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement. *De La Paz*, 279 S.W.3d at 343–44; *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). If a suspect requests counsel at any time during a custodial interview, "he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 459 (1994). This secondary *Miranda* right to counsel is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Id.* at 458. "A suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present." *Id.* However, in the context of invoking the *Miranda* right to counsel, a suspect must do so "unambiguously." *Berghuis v. Thompkins*, __U.S.__, 130 S.Ct. 2250, 2259–60 (2010). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights. *Davis*, 512 U.S. at 459.

The trial court reviewed the following conversation between Jernigan and the interrogating officers which transpired after Jernigan was asked to take a polygraph examination:

> BJ[3]: Do I need to get a lawyer? I mean?
>
> WE[4]: Well that is you're [sic] choice.

---

[3]Refers to Jernigan.

BJ: I mean I don't know.

WE: That is you're [sic] choice; you got the right as we read in these right[s] you got the right to stop this thing at any time. You understand?

BJ: I mean I am telling you the truth, I don't think I need one but, I mean.

CL[5]: Okay you don't need one then is that what you think?

WE: Yeah, it is totally up to you.

BJ: Can I talk to one first?

WE: First before what?

BJ: Before anything else happens I mean, I am telling yall [sic] the truth I am just scared. I am real scared right now and I have been the whole time.

WE: So you don't want to talk to us no more or you do want to talk to us?

CL: Are you talking about the polygraph?

BJ: I don't, I don't know. . . . Just in general right now, I mean I am scared I don't. I didn't do it on purpose. I didn't do it on purpose, I am scared right now.

Jernigan proceeded with the interview and confessed to the details of the battery.

In *Davis* the defendant stated, "Maybe I should talk to a lawyer," and the United States Supreme Court found that was not an unambiguous request for counsel. *Id*. at 462. The Texas Court of Criminal Appeals has likewise required an unambiguous assertion of the right to counsel.

---

[4]Refers to Easley.
[5]Refers to Detective Lee. Lee's first name is not mentioned in the record.

*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010) (defendant's statement during police interview, "I should have an attorney" did not expressly invoke the right to counsel). Here, the trial court found that there was "not a clear, unambiguous invocation of the right to counsel." We agree with the trial court's ruling.

The transcript of the interrogation reveals that Jernigan first asked "do I need to get a lawyer, I mean?" The officers explained that was his right and that he could "stop this thing at any time." Jernigan then stated, "I don't think I need one, but, I mean," and finally asked, "Can I talk to one first?" The first statement merely asked about his right to counsel or asked the officers their opinion on whether he should obtain counsel, and thereafter Jernigan stated he did not think he needed counsel. Finally, he asked if he "could talk to one [lawyer] first." Jernigan never expressly stated that he wanted a lawyer. We are to evaluate whether Jernigan's right to counsel was invoked based on the totality of the circumstances surrounding the statement. *Id*. at 339. Based on precedent from the United States Supreme Court and the Texas Court of Criminal Appeals, we find that Jernigan did not clearly and unambiguously invoke his right to counsel and that a reasonable officer in light of the circumstances would have understood only that Jernigan "*might* be invoking the right to counsel." *Davis*, 512 U.S. at 459. Because Jernigan did not unambiguously request counsel, the trial court properly overruled the motion to suppress.

We overrule Jernigan's first point of error.

## II. The Record Does Not Support Jernigan's Claim to Additional Credit

The trial court granted Jernigan "credit for any time that he's served since his date of arrest on the motion to revoke probation in this matter." Jernigan claims that the trial court erred when it only gave him a twenty-six-day credit in the final written judgment. He complains that the officer's return on the capias was executed on September 16, 2010, that the trial was held "on or about November 10, 2010," and that therefore he should be entitled to a credit of fifty-seven days. The record contained an "order modifying bond and conditions of bond" signed on October 13, 2010. Aside from these documents, there is no other indication from the record as to the actual number of days Jernigan spent in jail.

It was Jernigan's burden to bring forward a record on appeal sufficient to show that the trial court erred in assessing the credit to be applied. *See Amador v. State*, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007); *Guajardo v. State*, 109 S.W.3d 456, 462 n.17 (Tex. Crim. App. 2003) ("It is . . . the appealing party's burden to ensure that the record on appeal is sufficient to resolve the issue he presents."). Recognizing this, Jernigan asks this Court to

> order the trial court to require the District Attorney for Bowie County, Texas, to present it with the full and correct assessment of all time Defendant has served in this case, and thereafter ensure that the trial court judgment award [sic] proper credit for all prior time incarcerated as presented therein.

We decline to issue this request for production of documents. Since the record does not support Jernigan's claim to relief requested, his second point of error is overruled.[6]

## III.    Jernigan Failed to Separately Appeal Denial of Appeal Bond

---

[6]"Pre-sentence time credit claims typically must be raised by a motion for judgment *nunc pro tunc* filed with the clerk of the convicting trial court." *Ex parte Florence*, 319 S.W.3d 695, 696 (Tex. Crim. App. 2010).

The trial court entered an order denying Jernigan's motion for the court to set bail pending appeal on May 11, 2011. Article 44.04(g) of the Texas Code of Criminal Procedure, entitled "Bond pending appeal," provides that "[t]he right of appeal to the Court of Appeals of this state is expressly accorded the defendant for review of any judgment or order made hereunder, and said appeal shall be given preference by the appellate court." (West 2006). This statute "provides a separate, expedited appeal of such orders." *Ortiz v. State*, 299 S.W.3d 930, 932 (Tex. App.—Amarillo 2009, no pet.). Because an Article 44.04 appeal is separate "from the appeal of the conviction and punishment," "it must be perfected by a separate notice of appeal." *Davis v. State*, 71 S.W.3d 844, 845 (Tex. App.—Texarkana 2002, no pet.); *Ortiz*, 299 S.W.3d at 933.

"An appellate court lacks jurisdiction to consider an appeal absent a timely filed notice of appeal." *Ortiz*, 299 S.W.3d at 933. Here, Jernigan failed to separately appeal from this order denying appellate bond. Therefore, we lack jurisdiction over Jernigan's last point of error, which we dismiss.

## IV. Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:     October 18, 2011
Date Decided:       October 19, 2011

8

Do Not Publish