# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00548-CV

**Ultimate Ford, Inc., d/b/a Ultimate Ford Giddings; and Weatherby Ford, Inc. d/b/a Ultimate Ford, Appellants**

**v.**

**Motor Vehicle Division of the Texas Department of Transportation and Ford Motor Company, Inc., Appellees**

### DIRECT APPEAL FROM THE MOTOR VEHICLE DIVISION OF THE TEXAS DEPARTMENT OF TRANSPORTATION

### M E M O R A N D U M   O P I N I O N

Ultimate Ford, Inc. d/b/a Ultimate Ford Giddings and Weatherby Ford, Inc. d/b/a Ultimate Ford (the Dealerships) appeal a final order of the Motor Vehicle Division, Texas Department of Transportation (the Division), finding that good cause existed for Ford Motor Company to terminate its franchise agreements with the Dealerships.[1] The Dealerships bring several complaints on appeal that all center on the fact that Ford's statutorily required notice of termination to the Dealerships was based on an outdated version of the applicable statute. We will affirm the Division's order.

---

[1] In the interim, the legislature has, effective November 1, 2009, transferred the Division's functions to the newly created Texas Department of Motor Vehicles. *See* Act of May 18, 2009, 81st Leg., R.S., ch. 933, § 6.01(a), 2009 Tex. Gen. Laws 2485, 2519. As it was the former Division that issued the order on appeal, we will refer to that entity rather than its successor for clarity.

**BACKGROUND**

The Dealerships do not challenge the Division's findings of underlying fact. These findings reflect that between 1999 and 2001, Mohammed Assadi acquired sole ownership of two franchised Ford dealerships, Ultimate Ford in Hubbard (Hubbard Ford) and Ultimate Ford Giddings (Giddings Ford). Both Dealerships encountered financial distress for various reasons. In March 2005, after Assadi's floor plan lender, Ford Motor Credit Company, notified Assadi that the Dealerships were out of trust in the amount of $399,000, both Dealerships filed bankruptcy petitions. Over the next eighteen months, the Dealerships were each in and out of bankruptcy twice, and Hubbard Ford was twice seized and shut down for failure to pay local taxes.

In May 2006, the bankruptcy court authorized Ford to begin the process of terminating the Dealerships' franchises. By letters dated June 27, 2006, Ford served Assadi with notices of termination for both Dealerships. At relevant times, section 2301.453 of the occupations code required the following of Ford:

(a)    Notwithstanding the terms of any franchise, a manufacturer, distributor, or representative may not terminate or discontinue a franchise with a franchised dealer . . . unless the manufacturer, distributor, or representative provides notice of the termination or discontinuance as required by Subsection (c) and:

  (1)    the manufacturer, distributor, or representative receives the dealer's informed written consent;

  (2)    the appropriate time for the dealer to file a protest under Subsection (e) has expired; or

  (3)    the board makes a determination of good cause under Subsection (g).

. . .

(c)　Except as provided by Subsection (d), the manufacturer, distributor, or representative must provide written notice by registered or certified mail to the dealer and the board stating the specific grounds for the termination or discontinuance.　The notice must:

　　(1)　be received not later than the 60th day before the effective date of the termination or discontinuance; and

　　(2)　contain on its first page a conspicuous statement that reads: "NOTICE TO DEALER:　YOU MAY BE ENTITLED TO FILE A PROTEST WITH THE TEXAS MOTOR VEHICLE BOARD IN AUSTIN, TEXAS, AND HAVE A HEARING IN WHICH YOU MAY PROTEST THE PROPOSED TERMINATION OR DISCONTINUANCE OF YOUR FRANCHISE UNDER THE TERMS OF CHAPTER 2301, OCCUPATIONS CODE, IF YOU OPPOSE THIS ACTION."

(d)　Notice may be provided not later than the 15th day before the effective date of termination or discontinuance if a licensed dealer fails to conduct its customary sales and service operations during its customary business hours for seven consecutive business days. . . .

Tex. Occ. Code Ann. § 2301.453 (West 2004).[2]　The letters notified Assadi that the terminations were based in part on "failure to function in the ordinary course of business for more than seven consecutive business days, and inability of the Dealer to meet debts as they mature."　The letter set an effective date for the termination of fifteen days after Assadi's receipt of the notice, subject to extensions if Assadi requested and pursued a conference with Ford's Dealer Policy Board.

At the top of each of Ford's notice-of-termination letters was printed the following:

---

[2]　We cite the current version of the code unless there are material intervening substantive changes.

3

**NOTICE TO DEALER: YOU MAY BE ENTITLED TO FILE A PROTEST WITH THE TEXAS MOTOR VEHICLE COMMISSION IN AUSTIN, TEXAS AND HAVE A HEARING IN WHICH YOU MAY PROTEST THE PROPOSED TERMINATION OR NONCONTINUANCE OF YOUR FRANCHISE UNDER THE TERMS OF THE TEXAS MOTOR VEHICLE COMMISSION CODE IF YOU OPPOSE THIS ACTION.**

This notice did not precisely conform to the form of notice specified in section 2301.453(c)(2) of the occupations code, but differed in two respects. First, Ford's notice referred to the "Motor Vehicle Commission" rather than the "Motor Vehicle Board," tracking a version of the notice requirement found in the predecessor statute, the motor vehicle commission code, prior to 1997. *See* Act of May 20, 1997, 75th Leg., R.S., ch. 639, § 30, 1997 Tex. Gen. Laws 2183, 2199. Second, Ford's notice referred to the former motor vehicle commission code, while the form of notice specified by statute had been updated to refer to chapter 2301, occupations code, when the former code was repealed and recodified without intended substantive change in 2001. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, §§ 5, 14, 2001 Tex. Gen. Laws 4570, 4920, 5020.

Interestingly, by the time of Ford's notices to the Dealerships, the "motor vehicle board"—the entity referenced in the applicable occupations code version of the statute—no longer existed. In 2005, the legislature had abolished the board and transferred its functions to the motor vehicle division of the Texas Department of Transportation. *See* Act of May 30, 2005, 79th Leg., R.S., ch. 281, §§ 7.01-.06, 2005 Tex. Gen. Laws 778, 839-40.[3]

---

[3] And, as previously noted, the legislature later moved those functions yet again to the department of motor vehicles.

After unsuccessfully appealing the terminations to Ford's Dealer Policy Board, the Dealerships timely filed protests of the terminations with the Division. *See* Tex. Occ. Code Ann. § 2301.453(d). A contested-case hearing was held before a Division administrative law judge (ALJ), who issued a proposal for decision recommending that the Dealerships' franchise agreements be terminated. In support, the ALJ made findings of fact addressing the considerations set forth in section 2301.455, occupations code, and concluded that good cause had been established for termination of the franchises. *See id.* §§ 2301.454(d), .455 (West 2004). Additionally, the ALJ found:

84.	Ford's notices of termination identified the Texas Motor Vehicle Commission rather than the Texas Motor Vehicle Board, as the agency with which a termination protest should be filed.

85.	Ford's notices of termination referred to the Texas Motor Vehicle Commission Code, rather than Chapter 2301 of the Texas Occupations Code, as the governing statute.

In light of these findings, the ALJ concluded that "Ford Motor Company's notice[s] of termination fail to comply with the requirements of Tex. Occ. Code Ann. § 2301.453(c)." The ALJ further recommended that the Division order that Ford "cease and desist from failure to comply with the requirements of Tex. Occ. Code Ann. § 2301.453(c)(2)." The ALJ did not, however, determine that this non-compliance should alter the Division's ruling regarding termination of the franchise agreements.

The Division's director amended two of the ALJ's proposed conclusions of law to correct typographical errors and, as amended, adopted the ALJ's proposed findings, conclusions,

and recommendations in their entirety. The director ordered that the Dealerships' franchise agreements would terminate on the date after the order became final and that Ford "shall cease and desist from failure to comply with the requirements of Tex. Occ. Code Ann. § 2301.453(c)(2)."

After filing a motion for rehearing with the director, which was denied, the Dealerships sought judicial review in Travis County district court. Ford subsequently removed the proceeding to this Court. *See* Tex. Occ. Code Ann. § 2301.751(b) (West 2004).

## ANALYSIS

The Dealerships do not challenge the Division's findings and conclusions that good cause exists to terminate their franchises, but bring a single issue complaining that their substantial rights were nonetheless prejudiced because Ford's notice letters did not, as the Division found, precisely track the language specified in occupations code section 2301.453(c)(2), but identified the "Texas Motor Vehicle Commission" rather than the "Texas Motor Vehicle Board" as the agency with which to file their protests, and identified the "Texas Motor Vehicle Commission Code" rather than "Chapter 2301, Occupations Code" as the governing statute. The Dealerships emphasize that the legislature repeatedly used the word "must"—a term denoting a condition precedent—in requiring that a manufacturer provide the notice specified in subsection (c)(2) before terminating a franchised dealership. *See* Tex. Gov't Code Ann. § 311.016(3) (West 2005) ("'[m]ust' creates or recognizes a condition precedent."); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (citing section 311.016). The Dealerships emphasize the following statutory language:

6

(a)     Notwithstanding the terms of any franchise, *a manufacturer*, distributor, or representative **may not terminate** or discontinue *a franchise with a franchised dealer* . . . *unless the manufacturer*, distributor, or representative *provides notice of the termination or discontinuance as required by Subsection (c)* and:

> (1)     the manufacturer, distributor, or representative receives the dealer's informed written consent;

> (2)     the appropriate time for the dealer to file a protest under Subsection (e) has expired; or

> (3)     the board makes a determination of good cause under Subsection (g).

. . .

(c)     Except as provided by Subsection (d), *the manufacturer*, distributor, or representative *must provide written notice* by registered or certified mail *to the dealer* and the board stating the specific grounds for the termination or discontinuance.  *The notice must*:

> (1)     be received not later than the 60th day before the effective date of the termination or discontinuance; and

> (2)     *contain on its first page a conspicuous statement that reads: "NOTICE TO DEALER:  YOU MAY BE ENTITLED TO FILE A PROTEST WITH THE TEXAS MOTOR VEHICLE BOARD IN AUSTIN, TEXAS, AND HAVE A HEARING IN WHICH YOU MAY PROTEST THE PROPOSED TERMINATION OR DISCONTINUANCE OF YOUR FRANCHISE UNDER THE TERMS OF CHAPTER 2301, OCCUPATIONS CODE, IF YOU OPPOSE THIS ACTION."*

Tex. Occ. Code Ann. § 2301.453 (emphasis added).  The Dealerships further emphasize that this Court in *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Board* upheld a motor vehicle board order that a manufacturer's letter to a dealer threatening termination constituted an ineffective termination because the letter "d[id] not satisfy all of the statutory requirements."  179 S.W.3d

7

589, 596, 605-07 (Tex. App.—Austin 2005, pet. denied). From this, the Dealerships conclude that "[e]ach attempted notice of termination of a dealership franchise MUST contain the EXACT word-for-word language of an unambiguous statutory disclaimer that was carefully drafted by the legislature and included in the statute," that Ford's failure to comply rendered its termination letters ineffective, and that the Division's order therefore violated the occupations code, exceeded the Division's authority, resulted from "improper procedure," contained an error of law, was an abuse of the Division's discretion, and was not supported by substantial evidence—in short, requires reversal under every category of error listed in the APA's definition of the substantial-evidence standard of review[4]—in failing to enforce "the statutory notice provision as a condition precedent to termination." We disagree.

Statutory construction presents questions of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id*. We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*,

---

[4] *See* Tex. Gov't Code Ann. § 2001.174 (West 2008) (reviewing court may not substitute its judgment on the weight of the evidence on questions committed to the agency's discretion, but must reverse and remand the agency decision if the appellant's substantial rights have been prejudiced because the agency's findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed the ALJ's statutory authority; (3) were made through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion).

246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). However, with regard to a statute that an agency is charged with enforcing, we give "serious consideration" to the agency's construction of it, so long as that construction is reasonable and consistent with the statutory language. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008).

Although the Dealerships are correct that "must" used in a code denotes a condition precedent, *see* Tex. Gov't Code Ann. § 311.016(3), it does not necessarily follow that, as the Dealerships assume, any non-compliance with the notice requirements by Ford must automatically invalidate the Division's ultimate good-cause determination. To determine the consequences of a failure to satisfy a condition precedent, we look to the legislative intent reflected in the statute. *See Helena Chem Co.*, 47 S.W.3d at 494-96. Occupations code 2301.453 does not specify any particular consequences if, as here, a termination notice does not precisely track the form of notice in section 2301.453(c)(2). Thus, we look to that requirement's underlying purposes. *See id.* at 495. The evident purposes of this requirement is to ensure that a dealer facing termination is notified of its statutory rights to protest the termination and obtain a hearing, and how to do so. The Division's findings and the record reflect that those purposes were satisfied here.

At the top of each of Ford's letters was an all-caps, boldface notice informing the Dealership of its rights to "**FILE A PROTEST WITH THE TEXAS MOTOR VEHICLE *COMMISSION* [RATHER THAN 'BOARD'] IN AUSTIN, TEXAS, AND HAVE A HEARING IN WHICH YOU MAY PROTEST THE PROPOSED TERMINATION**

9

**OR DISCONTINUANCE OF YOUR FRANCHISE UNDER THE TERMS OF *THE MOTOR VEHICLE CODE* [RATHER THAN 'CHAPTER 2301, OCCUPATIONS CODE'] IF YOU OPPOSE THIS ACTION**." The letters also specified the grounds for termination. *See* Tex. Occ. Code Ann. § 2301.454(c). These letters prompted the Dealerships to file protests of the terminations, which they did timely, with the correct agency, and with citations to the correct governing statute (the occupations code), and the Dealerships went on to participate vigorously in the ensuing contested-case hearing. There is no contention that any defect in the above notices prejudiced the Dealerships' abilities to assert their protest rights. In fact, the form language specified in the occupations code, like the language in Ford's notice, also inaccurately identified the agency with which the protest was to be filed. While the correct entity was the Division, Ford identified the agency as the "Motor Vehicle Commission," and the occupations code identified the agency as the "Motor Vehicle Board." Despite these inaccuracies, the Dealerships managed to file their protests with the correct entity—the Division.

On this record, we conclude that the Division's decision that any defect in Ford's notice-of-termination letters did not render Ford's termination or the Division's proceedings invalid under the occupations code was reasonable and consistent with the statute, and that we should defer to it. *See First Am. Title Ins. Co.*, 258 S.W.3d at 632; *Helena Chem Co.*, 47 S.W.3d at 494-96. Contrary to the Dealership's arguments, *Buddy Gregg* does not stand for the proposition that any and all deviations from the statutory form of notice render a manufacturer's termination letter ineffective as a matter of law.

10

*Buddy Gregg* involved a deteriorating relationship between a motor home manufacturer (Liberty Coach) and a motor home dealer (Buddy Gregg). At one point, Liberty Coach sent Buddy Gregg a letter threatening to terminate its franchise agreement unless Buddy Gregg agreed to numerous modifications of the agreement within twenty-four hours. *See id.* at 596. As this Court observed, "[t]he letter did not satisfy the requirements of the occupations code" for a termination: "it did not contain the 'notice to dealer' termination language"—i.e., "a conspicuous statement on the first page notifying the dealer of its right to protest the termination and have a hearing before the Board"—"it was not sent to the Board, and it did not specify the grounds for termination." *Id.* at 594, 596; *cf.* Tex. Occ. Code Ann. § 2301.454(c). Thereafter, the parties continued to negotiate their agreement and conduct business together. However, after litigation arose, Buddy Gregg took the position that Liberty Coach's letter was an unlawful termination of the agreement. *See Buddy Gregg*, 179 S.W.3d at 596. The Board eventually determined that the letter instead constituted an *ineffective* termination attempt. *See id.* at 605-07. We gave deference to the Board's construction of the occupations code as reasonable and not inconsistent with the statute's plain meaning. *See id.* at 610 n.13 (citing *Tarrant Appraisal Dist. v. Moore.*, 845 S.W.2d 820, 823 (Tex. 1993)).

In sum, our holding in *Buddy Gregg* was merely that, on that record, the Board's construction of the occupations code to determine the legal effect of Liberty Coach's non-compliance was reasonable, not inconsistent with the statute's plain meaning, and entitled to deference. Here, as previously explained, the record is vastly different, and the agency reached a different result when determining the legal effect of a manufacturer's non-compliance with occupations code

section 2301.453. Nonetheless, we should, just as in *Buddy Gregg*, give deference to the Board's construction of the occupations code regarding the consequences of that non-compliance for the same reasons.

The Dealerships' arguments are each premised on the contention that because Ford's notice-of-termination letters were found not to have complied with occupations code section 2301.453(c)(2), it follows that the Division committed each category of error identified in government code section 2001.174 in proceeding to find good cause for Ford to terminate the franchises. Having rejected that core contention, we overrule the Dealerships' sole issue.

## CONCLUSION

Having overruled the Dealerships' sole issue, we affirm the Division's order.

_____
Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   August 27, 2010

12