**Opinion issued June 25, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00685-CV

————————————

**GALVIN KENNEDY, Appellant**

**V.**

**CITY OF TEXAS CITY, Appellee**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case No. 18TX0177-A**

---

## MEMORANDUM OPINION

Appellant, Galvin Kennedy ("Kennedy"), challenges the trial court's order denying his motion for partial summary judgment and granting the cross-motion for summary judgment of appellee, City of Texas City ("the City"), following the demolition of real property in which Kennedy had a mortgage interest. Kennedy

raises four issues on appeal. In his first and second issues, he contends that the municipal court orders declaring the property a nuisance and authorizing its demolition should be set aside and declared void because the City failed to (1) provide notice to Kennedy of its abatement lawsuit against the property owner and (2) join and serve Kennedy as a party to that suit. In his third issue, he contends that the City's demolition of the property constituted a taking under the Texas Constitution. In his fourth issue, Kennedy contends that the City's compliance with its municipal code does not excuse its failure to provide him notice of its abatement lawsuit and add him as a mandatory party to the suit.

We reverse and render.

### Background

In July 2016, Third Avenue 22, LLC ("Third Avenue") purchased property, including an apartment complex, located at 622 3rd Avenue North, Texas City, Texas 77590 ("the property") from HL Homes, LLC, through a general warranty deed. Kennedy, who had loaned $400,000 to Third Avenue, was granted a deed of trust for the property as security for the loan. The deeds were filed and recorded in the Galveston County Office of Public Records.

On May 8, 2017, the City notified Third Avenue by certified mail that the property was in substandard condition in violation of the International Property

2

Maintenance Code,[1] one of the model building codes adopted by the City, and that Third Avenue was required to bring the property into compliance, or contact the City's inspections department, by May 18, 2017. The notice was filed in the real property records of Galveston County, Texas and posted on the property.

On May 31, 2017, the City sent a Notice of Civil Abatement Action to Third Avenue. The notice stated that inspections of the property had revealed a violation of Section 108 of the City's Code of Ordinances, and despite Third Avenue having received previous notice of the "substandard building" violations, it had not corrected the violations. The letter stated that Third Avenue must abate the nuisance within ten days to avoid a civil abatement action by the City. The notice of abatement was filed in the Galveston County real property records as well as posted on the property.

On July 19, 2017, following a hearing, the municipal court of record issued an order of abatement ("first abatement order"). The court found that sufficient evidence was presented establishing a violation of the City's Code of Ordinances,

---

[1] Upon the City's request, we take judicial notice of its charter and ordinances found at https://codelibrary.amlegal.com/codes/texascity/latest/texascity_tx/0-0-0-1. *See* TEX. R. EVID. 201(b)(2), (c)(2) (stating court may judicially notice facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and court "must take judicial notice if a party requests it and the court is supplied with the necessary information"); *see also Elias v. Griffith*, No. 01-17-00333-CV, 2018 WL 3233587, at *4 (Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.) (mem. op.) (taking judicial notice of minutes from city council meeting available on City's website).

3

and therefore, grounds existed for issuing an administrative enforcement order, and that abatement of the nuisance was reasonable and in the best interest of public health, safety, and welfare. The first abatement order authorized the City to execute the order of abatement and enter the property "to perform specific conduct necessary for abatement and compliance with the ordinance." The City sent a copy of the first abatement order to Third Avenue by certified mail. The order was filed in Galveston County's real property records and posted on the property.

On September 28 and October 3, 2017, the City sent notices to Third Avenue by certified mail of the uncorrected violations and advised Third Avenue that it was proceeding with a civil abatement hearing pursuant to Subchapter B of Chapter 54 of the Texas Local Government Code. The City posted the notices on the property.

On October 18, 2017, the municipal court held an abatement hearing at which counsel for the City and Third Avenue appeared. The court entered an agreed order of abatement for commercial property ("second abatement order"), finding that a code violation existed and that Third Avenue agreed that abatement of the nuisance was reasonable and in the best interest of public health, safety, and welfare. The second abatement order directed Third Avenue to acquire planning board approval and all necessary construction permits within ninety days of the order and to bring the property into full compliance with all current zoning

4

requirements and adopted building codes within 300 days. If Third Avenue failed to do so, the second abatement order authorized the City to execute the order of abatement and enter the premises to perform specific conduct necessary for abatement and compliance with the ordinance.

In May 2018, the City abated the condition by demolishing the structure on the property and filed a demolition lien for $64,401.00.

The City and other taxing entities[2] filed suit against Third Avenue and Kennedy, in rem only, to collect delinquent ad valorem taxes on the property. In response, Kennedy filed a counterclaim against the City alleging an unconstitutional taking, inverse condemnation, and violations of his due process rights for which he sought a declaratory judgment. The counterclaim was severed from the tax suit, and Kennedy was realigned as plaintiff in the underlying suit. Kennedy's second amended petition was the live pleading at the time the trial court rendered summary judgment.

Kennedy moved for partial summary judgment on his declaratory judgment claim to set aside the municipal court's two abatement orders and declare them void and on his inverse condemnation claim. He asserted that the municipal court's orders declaring the property a nuisance and authorizing its demolition

---

[2] The taxing entities included Galveston County, Texas City Independent School District, and College of the Mainland.

should be set aside and declared void as to him because the City (1) failed to provide constitutionally required notice to him of its abatement lawsuit against Third Avenue regarding the property, (2) violated the Texas Local Government Code by not providing notice in person or by mail to him of its abatement lawsuit against Third Avenue, and (3) failed to join and serve him as a party to the lawsuit it filed against Third Avenue as required by Texas Rule of Civil Procedure 39(a).[3] Kennedy also asserted that the City unconstitutionally took the property for public use without legal notice and compensation when it demolished the property on which he was the first lienholder of record, and thus, under the principles of inverse condemnation, the City was legally obligated to compensate him for the destruction of the property.

In its summary judgment response, the City asserted that the notice it sent to the property owner, Third Avenue, about the City's code enforcement activities regarding the property complied with the notice requirements of Section 150.201 of the City's Code of Ordinances when enforcing a municipal ordinance. It noted that Section 105.201's notice requirement is similar to the notice requirement under Subsection B of Chapter 54 of the Texas Local Government Code, which authorizes municipalities to bring civil actions to enforce their ordinances. The City argued that the cases Kennedy cited in support of his contentions that the

---

[3]     *See* TEX. R. CIV. P. 39a.

City's notice was deficient and it was required to join him as a party to its abatement suit involved property owners who had failed to pay property taxes and the taxing authorities had foreclosed on their property, which extinguished the owners' interest and title to their properties. Here, by contrast, although the case was initiated as a delinquent tax case, Kennedy's claims had been severed into a separate matter, the City had not foreclosed on the property, Third Avenue remained the record property owner, and Kennedy's interest had not been extinguished. With respect to Kennedy's inverse condemnation claim, the City asserted that the agreed order entered by the municipal court established that a nuisance existed. It argued that because a finding that a property is a public nuisance is generally dispositive of a takings claim, and the judgment had not been appealed, Kennedy was not entitled to judgment as a matter of law on his inverse condemnation claim. Lastly, the City asserted that Kennedy sought a judicial interpretation of the prior agreed order for which declaratory relief is not available.

In his summary judgment reply, Kennedy asserted that the City ignored the two independent grounds raised in his summary judgment motion—that the municipal court orders were void because the City had failed to provide him actual notice in violation of constitutional due process and to join him to its abatement lawsuit because, as a lienholder, he was an indispensable party to the suit. Kennedy argued that the City's position that the municipal court's nuisance finding

7

was final as to him failed to address his argument that the municipal court's finding was void, not voidable, due to the City's failure to provide the constitutionally required notice and to join him under Texas Rule of Civil Procedure 39.[4]

The City filed a cross-motion for summary judgment, which largely mirrored its summary judgment response to Kennedy's motion. Specifically, it asserted that it was entitled to judgment as a matter of law on Kennedy's claims against it because it had followed the legal requirements, including providing adequate notice, to enforce its health and safety ordinances. It further asserted that because the municipal court of record found that a nuisance existed on the property, and that judgment was not appealed, no taking or inverse condemnation had occurred. The City also argued that a declaratory judgment is not appropriate when, as here, a party seeks a judicial interpretation of an earlier judgment.

Kennedy responded to the City's cross-motion asserting that it was virtually identical to its summary judgment response. Kennedy adopted by reference his partial summary judgment motion, the evidence attached to his motion, and his reply brief in support of his motion.

---

[4] In his summary judgment pleadings, Kennedy further argued that he was entitled to summary judgment on his claims as a matter of law because the City's notices did not comply with Chapter 214 of the Texas Local Government Code. Because Kennedy does not present this argument in his brief on appeal, we do not consider it. *See* TEX. R. APP. P. 47.1.

Following a hearing, the trial court denied Kennedy's motion for partial summary judgment and granted the City's cross-motion for summary judgment on Kennedy's claims against it. This appeal followed.

## Summary Judgment Standard

Although the denial of summary judgment is normally not appealable, we may review a trial court's denial of summary judgment when both parties moved for summary judgment and the trial court granted one motion and denied the other. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Westlake Chem. Corp. v. Berkley Reg'l Ins. Co.*, No. 01-22-00225-CV, 2023 WL 3634322, at *3 (Tex. App.—Houston [1st Dist.] May 25, 2023, pet. denied) (mem. op.). In our review of such cross-motions, we review the summary judgment evidence presented by each party, determine all issues presented, and render the judgment that the trial court should have rendered. *See Tex. Mun. Power Agency*, 253 S.W.3d at 192; *Westlake Chem. Corp.*, 2023 WL 3634322, at *3. Each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). If we determine that a fact issue precludes summary judgment for either party, we remand the cause for trial. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792

9

(Tex. 1987); *Surety Bonding Co. of Am. v. Auto. Acceptance Corp.*, 674 S.W.3d 580, 587 (Tex. App.—Houston [1st Dist.] 2023, no pet.).

We review a trial court's order granting summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant on a traditional motion for summary judgment has the burden of showing that no genuine issue of material fact exists and must conclusively establish its right to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). When a plaintiff moves for summary judgment on his own claim, he must conclusively prove all essential elements of his cause of action. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). When a defendant moves for summary judgment on a plaintiff's claim, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Fallon v. MD Anderson Physicians Network*, 586 S.W.3d 58, 63–64 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). In deciding whether a disputed, material fact issue precludes summary judgment, evidence favorable to the non-movant will

10

be taken as true.  *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).  Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in the non-movant's favor.  *Id.* at 549.

**Notice Requirements**

In his first issue, Kennedy argues that the municipal court's orders declaring the property a nuisance and authorizing its demolition should be set aside and declared as void as to him because the City failed to provide constitutionally required notice to Kennedy, as lienholder, of its abatement lawsuit against the property owner, Third Avenue.  In response, the City asserts that it complied with the statutory notice requirements of Texas Local Government Code Chapter 54 when it provided notice to the property owner of its building code enforcement action, and thus, it conclusively established that it was entitled to summary judgment of Kennedy's claims against it.

Subchapter B of Chapter 54 of the Texas Local Government Code authorizes municipalities, such as the City, to bring civil actions to preserve their public health and safety.[5]  *See* TEX. LOC. GOV'T CODE ANN. § 54.012.  With respect to public safety, the City has adopted several building codes, among them the

---

[5] *See generally* TEX. LOC. GOV'T CODE ANN. ch. 5, 9, 26.  A municipality is a home-rule municipality if it operates under a municipal charter that has been adopted or amended as authorized by Article XI, Section 5, of the Texas Constitution.  *Id.* § 5.004.  The City operates under such a municipal charter.

11

International Building Code and International Property Maintenance Code, 2015 editions, and their amendments. *See* TEX. CITY, TEX., CODE OF ORDINANCES ch. 150, §§ 150.050, 150.051, 150.066. The City has reserved the right to enforce its health and safety ordinances and nuisance abatement orders in its municipal courts, including the enforcement of its ordinances enacted pursuant to Chapter 54 of the Texas Local Government Code.[6] *See* TEX. CITY, TEX., CODE OF ORDINANCES ch. 33, 150, §§ 33.02, 150.030.

Section 150.021 of the City's Code of Ordinances sets forth the notice required to be sent for purposes of enforcing a municipal ordinance related to building regulations:

> (A) (1) Where the city is required by statute, rule, regulation or ordinance to send a notice to an owner of real property for the purpose of enforcing a municipal ordinance, the city may include the following statement in the notice:
>
> > "According to the real property records of Galveston County, you own the real property described in this notice. If you no longer own the property, you must execute an affidavit stating that you no longer own the property and stating the name and last known address of the person who acquired the property from you. The affidavit must be delivered in person or by certified mail, return receipt requested, to this office not

---

[6] In addition to the municipal court, the City created a Building and Standards Commission to hear and determine cases concerning alleged ordinance violations. *See* TEX. LOC. GOV'T CODE ANN. § 54.033.

later than the 20th day after the date you received this notice. If you do not send the affidavit, it will be presumed that you own the property described in this notice, even if you do not."

(2) The notice must be delivered in person or by certified mail, return receipt requested.

. . . .

(F) The city is considered to have provided notice to a property owner if the city complies with the statute, rule, regulation or ordinance under which the notice is sent and if it:

(1) Complies with division (A) above and does not have an affidavit from the record owner[.]

. . . .

(G) If the city complies with this section and does not receive an affidavit under division (C) [stating that the record owner no longer owns the property], the record owner is presumed to be the owner of the property for all purposes to which the notice relates.

TEX. CITY, TEX., CODE OF ORDINANCES ch. 150, § 150.021. Section 150.021's notice requirements are substantially similar to the notice required to be sent to property owners under Chapter 54 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 54.005.

The City brought its abatement action under Subchapter B of Chapter 54 and its ordinances. By their express terms, Subchapter B of Chapter 54 of the Texas Local Government Code and Section 105.021 of the City's Code of Ordinances require the City to provide notice to an owner of real property for the purpose of

13

enforcing a municipal ordinance.[7]  It is undisputed that Third Avenue is the record owner of the property and the City sent notices to Third Avenue regarding its code enforcement activities by certified mail, return receipt requested.  The municipal court entered its orders related to the property expressly pursuant to Chapter 54 and the City's Code of Ordinances.  Third Avenue appeared at the hearings and its counsel agreed to the orders of abatement and approved it as to form and substance.[8]  The City complied with the requirements of Chapter 54 and section 105.021.  That does not, however, end our inquiry.

The record shows that Kennedy had a publicly recorded deed of trust and first lien against the property before the municipal court issued its abatement orders and the City demolished the property.  In its responses to Kennedy's requests for admissions, the City admitted that it was aware of Kennedy's deed of trust before it demolished the property.  And, the City admitted that it was "required to provide notice to all parties with an interest in the Property of Texas City's decision to abate the nuisances on the Property."  Kennedy argues that his

---

[7]  By contrast, Subchapter C of Chapter 54, which concerns quasi-judicial enforcement of health and safety ordinances, expressly requires notice to lienholders of record.  *See id.* § 54.035(a)(1) ("[N]otice of all proceedings before the [building and standards] commission panels must be given . . . to the record owners of the affected property, and *each holder of a recorded lien against the affected property* . . . ." (emphasis added)).

[8]  Subchapter B of Chapter 54 and the City's ordinances require that an owner notify the governmental entity if he no longer owns the property in question.

14

deed of trust and status as a first mortgagee with a lien created a property interest such that the City was required to provide him with actual notice in person or by mail, and that its failure to do so violated his constitutional due process rights, which rendered the municipal court's orders void. The City responds that it followed the legal requirements, including providing adequate notice, to enforce its health and safety ordinances. It further asserts that Kennedy sought a judicial interpretation of the prior agreed order for which declaratory relief is not available.

In support of his argument, Kennedy cites the Texas Supreme Court's decision in *Mitchell v. MAP Resources, Inc.*, 649 S.W.3d 180 (Tex. 2022). In *Mitchell*, the taxing authorities sued approximately 500 owners of more than 1600 parcels of mineral property who had failed to pay their property taxes. *See id.* at 184. Elizabeth Mitchell ("Elizabeth") owned 320 acres of the property in question and was one of the defendants sued by the taxing authorities. *See id.* None of the defendants were personally served with the lawsuit; instead, the taxing authorities posted citations on the door of the county courthouse to notify the defendants that had been sued. *See id.* The taxing authorities obtained a default judgment foreclosing tax liens on all 1600 parcels, including the mineral interests. *See id.* Sixteen years later, Elizabeth's heirs sued to have the default judgment and subsequent tax sale set aside for constitutional due process violations. *See id.* at 185. They argued that the default judgment was void because Elizabeth was not

15

personally served in compliance with constitutional due process requirements and, as a result, the trial court did not acquire personal jurisdiction over her. *See id.*

The Texas Supreme Court concluded that the taxing authorities had not complied with the requirements of due process which "required notice that is reasonably calculated to apprise parties of the pendency of an action." *Id.* In reaching its conclusion, the Court cited the United States Supreme Court's decision in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), noting:

> The Court held that a mortgagee has a legally protected property interest and is therefore entitled to notice that is reasonably calculated to apprise her of an impending tax sale. Further, when a mortgagee is identifiable through an instrument that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. Personal service or mailed notice is required even though sophisticated [defendants] have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are likely to be initiated.

*Mitchell*, 649 S.W.3d at 190 (third alteration in original) (internal citations and quotations omitted). The Court held that "citation by publication or posting violates due process when the address of a known defendant is readily ascertainable from public records that someone who actually wants to find the defendant would search." *Id.*

Kennedy cites additional cases for the proposition that a lienholder's protected property interest entitles him to due process rights and actual notice by mail or in person of court and governmental actions affecting the property. *See*

16

*Sec. State Bank & Trust v. Bexar Co.*, 397 S.W.3d 715, 721 (Tex. App.—San Antonio 2012, pet. denied) (concluding bank, which had recorded deed of trust and first lien against property subject of delinquent tax suit, was constitutionally entitled to notice to afford it opportunity to protect its property interest), *abrogated on other grounds by Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180 (Tex. 2022); *see also Ocwen Loan Servicing, LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584, 592 (S.D. Tex. 2015) (concluding lender who was record lienholder with security interest in property when tax foreclosure occurred had legally protected interest in property and was entitled to actual notice in person or by mail of legal proceedings affecting property), *aff'd sub nom. Ocwen Loan Servicing, L.L.C. v. Moss*, 628 F. App'x 327 (5th Cir. 2016).

In response, the City argues that the cases Kennedy relies on are inapposite because they are delinquent property tax suits involving foreclosure of a tax lien. The City points out that here, by contrast, Kennedy does not assert that the City has foreclosed, or attempted to foreclose, on the property. Rather, the record shows that Third Avenue is still the record owner of the property, and Kennedy's interest in the property has not been extinguished.

The decision in *State Bank of Omaha v. Means* is instructive. In *Means*, the State Bank of Omaha sued the City of Mount Pleasant for damages resulting from the city's demolition of two portable buildings on which the bank had a lien. *See*

17

746 S.W.2d 269, 270 (Tex. App.—Texarkana 1988, writ denied). After the trial court entered a take-nothing judgment, the bank appealed arguing, in part, that the city's ordinance which authorized the demolition of the buildings was unconstitutional because it did not provide for notice to those holding liens on the property to be destroyed. *See id.*

The city's ordinance, which authorized the removal of structures constituting nuisances, provided for notice and an opportunity for hearing to the property owners, but it did not provide for any notice to lienholders. *See id.* at 270–71. The court noted that the city did not conduct a lien search, and neither it nor Means, the property owner, notified the bank of any proceedings pertaining to the buildings or of their proposed demolition. *See id.* at 271.[9]

The court concluded that the ordinance as applied to the bank violated the bank's right to due process as guaranteed by the United States and Texas Constitutions. *See id*. at 272. The court explained:

> At a minimum, procedural due process or due course of law requires that a party be given reasonable notice and an opportunity to be heard with regard to any proceeding which may directly or adversely affect his legally protected interests. A mortgage is a substantial property interest that is entitled to the constitutional protection of due process. In Texas a security interest is an interest in personal property or fixtures which secures the payment or performance of an obligation, and is the equivalent of a chattel mortgage. The destruction of all or a

---

[9] Here, the City conceded that it knew of Kennedy's interest in the property before it was demolished.

> part of collateral securing a debt will defeat or severely impair the value of the mortgage.

> If the bank had been afforded the notice required by due process, it would have had the opportunity to have the buildings repaired to cure their deficiencies so that they complied with the ordinance and no longer constituted a nuisance.

*Id.* (Internal citations omitted).

We conclude that Kennedy was constitutionally entitled to notice of the City's lawsuit against Third Avenue regarding the property in order to provide him an opportunity to protect his property interest, and the City failed to provide such notice. We now consider the effect of the lack of notice and the recourse available to him.

A judgment entered without notice or service to an interested party is "constitutionally infirm" in that the failure to provide notice violates "the most rudimentary demands of due process of law." *Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 84 (1988). As opposed to a mere defect in service, a complete failure or lack of service on a party with a property interest adversely affected by the judgment constitutes a due process violation that warrants setting the judgment aside. *Id.*; *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 274 (Tex. 2012). A collateral attack may be used to set aside a judgment based on a complete lack of notice to an interested party in violation of their due process rights. *Rivera,* 379 S.W.3d at 273 (citing *Peralta,* 485 U.S. at 84).

19

Here, the record shows a complete lack of notice to Kennedy constituting a due process violation which renders the municipal court's orders declaring the property a nuisance and authorizing its demolition void as to Kennedy and subject to being set aside through a collateral attack. *Peralta,* 485 U.S. at 86–87 ("Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, . . . only 'wip[ing] the slate clean . . . would . . . restore[] the petitioner to the position he would have occupied had due process of law been accorded to him in the first place.'" (second and third alterations in original) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))). In his second amended petition, Kennedy collaterally attacked the municipal court's orders by seeking a declaration that they were void as to him because the City had failed to provide him the constitutionally required notice of its abatement lawsuit against Third Avenue regarding the property. Kennedy then moved for summary judgment on this ground.

We conclude that Kennedy established that he was entitled to judgment as a matter of law on his declaratory judgment claim seeking to set aside the municipal court's July 19, 2017 and October 18, 2017 orders and declaring such orders void as to him. We hold the trial court erred in granting summary judgment to the City on Kennedy's declaratory judgment claim and denying Kennedy summary judgment on his declaratory judgment claim. *See Tarr*, 56 S.W.3d at 278.

20

We sustain Kennedy's first issue.

Having concluded that Kennedy's suit against the City was a proper collateral attack based on a violation of his due process rights that renders the municipal court's orders void as to him, we need not address Kennedy's second issue arguing that the orders were void because the City failed to join and serve him as a party to its abatement lawsuit in accordance with Texas Rule of Civil Procedure 39. *See* TEX. R. APP. P. 47.1. We likewise need not address his fourth issue arguing that Texas City's compliance with its municipal code does not excuse its failure to provide him notice of its condemnation lawsuit and add him as a mandatory party to the suit.[10] *See id.*

### Inverse Condemnation Claim

In his third issue, Kennedy asserts that he was entitled to judgment as a matter of law on his inverse condemnation claim because the City demolished the property in which he had a protected interest for public use without proper compensation, which amounted to an unconstitutional taking under the Texas Constitution.

Article 1, Section 17 of the Texas Constitution provides that "no person's property shall be taken, damaged or destroyed for or applied to public use without

---

[10] We also need not consider Kennedy's alternative argument challenging the constitutionality of Chapter 54 of the Local Government Code or the City's ordinances. *See* TEX. R. APP. P. 47.1.

adequate compensation being made." TEX. CONST. art. I, § 17.  The elements of an inverse condemnation or "takings" claim are that (1) an entity with eminent domain power intentionally performed certain acts (2) that resulted in taking, damaging, or destroying the property for, or applying it to, (3) public use.  *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 25–26 (Tex. 2024).  Kennedy asserts that the summary judgment evidence supports each of these elements.

With regard to the first element, Kennedy asserts that the undisputed evidence shows that the City destroyed the property in the exercise of its purported lawful authority.  In support of his assertion, he points to the City's filing of a Labor Lien for Abating Substandard Buildings and accompanying affidavit attached to his summary judgment motion.  The affidavit includes an itemized account listing the fees associated with the abatement and includes a demolition fee of $57,630.  According to Kennedy, this evidence shows that the City intentionally hired a demolition company to raze the property that served as Kennedy's collateral.  He further asserts that the City took this action pursuant to its purported legal authority under "Section 54 of the Texas Government Code and Texas Code of Ordinance."  Kennedy points to the municipal court's abatement orders citing to the "City's Petition for Abatement and Removal of a Public Nuisance" as the basis for the demolition and the City's responses to his requests for admissions admitting that it condemned the property.

As to the second element, Kennedy argues that the City's actions resulted in the "taking, damaging, or destruction" of the property. Kennedy asserts that the City hired a company to demolish the property as reflected in the City's notice of lien and its answers to request for admissions in which it admitted that it demolished the property. Kenedy asserts that the City's demolition of the property satisfies the second element of his inverse condemnation claim.

With regard to the third element, Kennedy asserts that the City's abatement of the property was clearly for "public use." "In general, property is taken for a public use only when there results to the public some definite right or use in the undertaking." *Patel v. City of Everman*, 179 S.W.3d 1, 7 (Tex. App.—Tyler 2004, pet. denied); *Bay Ridge 31 Util. Dist. v. 4M Laundry*, 717 S.W.2d 92, 101 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Whether a taking of property is for public use is a judicial question. *Hous. Auth. of City of Dallas v. Higginbotham*, 143 S.W.2d 79, 84 (Tex. 1940); *Whittington v. City of Austin*, 174 S.W.3d 889, 897 (Tex. App.—Austin 2005, pet. denied). "Public use" includes matters of public health and public safety. *See City of Houston v. Crabb,* 905 S.W.2d 669, 674 (Tex. App.—Houston [14th Dist.] 1995, no writ); *see also Patel*, 179 S.W.3d at 8. Here, the July 19, 2017 abatement order states: "Sufficient evidence was presented to establish that a violation of Code, to wit: Substandard Buildings, occurred on the premises . . . thereby establishing the existence of

proper grounds for the issuance of the Administrative Enforcement Order. . . . The abatement of the nuisance is reasonable and in the best interest of public health, safety[,] and welfare." *See Patel*, 179 S.W.3d at 7 (concluding language in court's order that buildings were in violation of city code and "the defects or conditions exist to the extent that the life, health, property or safety of the public are endangered" demonstrated properties were demolished for "public use").

In its summary judgment response, as on appeal, the City asserted that a finding that property is a public nuisance, as is the case here, is generally dispositive of a "takings" claim. *City of Dallas v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012) ("We have long held that the government commits no taking when it abates what is, in fact, a public nuisance."). According to the City, the municipal court's October 18, 2017 order finding that the property was a nuisance is dispositive of Kennedy's inverse condemnation claim. The City further argues that because Kennedy did not appeal the order, it is a final judgment and established that a nuisance exists. Thus, Kennedy failed to establish all the elements required to prevail on his inverse condemnation claim, and summary judgment in favor of the City was proper. We disagree.

The City's acts forming the basis of Kennedy's takings claim were performed pursuant to the municipal court's orders declaring the property a nuisance and authorizing its demolition. However, as discussed above, we have

concluded that the City's failure to provide Kennedy with notice of its lawsuit to abate the property violated his constitutional due process rights rendering the municipal court's orders void as to him. Further, although Kennedy did not directly appeal the orders—presumably because he was neither served with notice of the lawsuit nor joined as a party—he collaterally attacked the orders by seeking a declaration that they are void as to him.

We conclude that Kennedy conclusively proved the elements of his inverse condemnation claim as a matter of law, and the City failed to negate the evidence supporting his claim. We hold the trial court erred in granting summary judgment in favor of the City on Kennedy's inverse condemnation claim and denying summary judgment to Kennedy on his claim.

We sustain Kennedy's third issue.

## Conclusion

We reverse the trial court's order granting summary judgment to the City on Kennedy's claims against it and render judgment granting summary judgment to Kennedy on his declaratory judgment claim seeking to set aside as void the municipal court's July 19, 2017 and October 3, 2017 orders and on his inverse condemnation claim.

Kristin Guiney
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.

25